IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL S. A MINOR, BY AND : 
THROUGH HIS PARENTS AND :
NATURAL GUARDIANS, : CIVIL ACTION
MICHAEL S. AND DAWN S., : NO.    06-3531
 :
AND :
 :
MICHAEL S. AND DAWN S. :
INDIVIDUALLY AND :
ON THEIR OWN BEHALF, :
ALL OF NEWTOWN, PA, :
         Plaintiffs, :
 :
         v. :
 :
COUNCIL ROCK SCHOOL DISTRICT,:
         Defendant. :

**MEMORANDUM AND ORDER**

Presently before this Court are Plaintiffs' Motion for Judgment on the Administrative Record
(Doc. 7), Defendant's Motion for Judgment on the Administrative Record (Doc. 8), and Plaintiffs'
Response to Defendant's Motion (Doc. 10).  For the reasons set forth below, the Court will deny
Plaintiffs' Motion and grant Defendant's Motion.

**BACKGROUND**

From the record of evidence, viewed in a light most favorable to Plaintiffs, the facts are as
follows.  This action is brought by Daniel S., a minor child with a disability, and his parents (the
"Parents"), Michael S. and Dawn S. (collectively "Plaintiffs") under the Individuals with Disabilities
Education Act, 20 U.S.C. § 1400 ("IDEA"); Section 504 of the Rehabilitation Act of 1973, 29
U.S.C. § 794 (Section "504"); and Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. § 1983
("Section 1983").  Daniel was diagnosed by Defendant (the school "District") as a student with a

specific learning disability and determined to be eligible for special education services under the IDEA. At Plaintiffs' request, a special education due process hearing took place February through April 2006. Plaintiffs sought 1) compensatory education from the 2002-2003 school year through the 2004-2005 school year; 2) tuition reimbursement at the Cambridge School for the 2005-2006 school year; 3) reimbursement for an Independent Educational Evaluation ("IEE") by Dr. Timothy King obtained by the parents in August 2005; and 4) reimbursement for reading tutoring costs incurred by the family from the beginning of the 2002-2003 school year. On May 12, 2006, the Hearing Officer determined that:

1)      the District did not fail to timely refer Daniel for multi-disciplinary evaluation;

2)      the District was not obligated to provide Daniel with compensatory education from September 2002 through the present;

3)      Daniel's parents were not entitled to reimbursement for the Cambridge School tuition for the 2005-2006 school year;

4)      Daniel's parents were not entitled to reimbursement for an Independent Educational Evaluation ("IEE") conducted by Dr. Timothy King; and

5)      Daniel's parents were not entitled to reimbursement for the costs of tutoring expenses incurred from the beginning of Daniel's 2002-2003 first grade school year.

The Special Education Appeals Panel affirmed the Hearing Officer's decision on June 23, 2006. Plaintiffs now seek a review and reversal of the Hearing Officer's decision and the Appeal Panel's affirming decision inasmuch as the decisions: 1) denied Daniel compensatory education for the 2002 through 2005 school years; and 2) denied Daniel's parents tuition reimbursement for the 2005-2006 school year. In addition Plaintiffs seek compensatory damages and reasonable attorney's

fees.

## LEGAL STANDARD

The standard of review for a Rule 12(c) motion is similar to the standard invoked for consideration of a Rule 12(b)(6) motion.  As with a Rule 12(b)(6) motion, this Court views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.  The motion is not granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law. Mele v. Fed. Reserve Bank, 359 F.3d 251, 253 (3d Cir. 2004) (quoting Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir. 2002)).  Specifically, on a Rule 12(b)(6) motion, the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view the allegations in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).

The question is whether the plaintiff can prove any set of facts consistent with its allegations that will entitle it to relief, not whether it will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept legal or unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 (1977); Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). Moreover, the claimant must set forth sufficient information to outline the elements of its claims or to permit inferences to be drawn that these elements exist.  See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (quoting Sadruddin v. City of Newark, 34 F. Supp. 2d 923, 925 (D.N.J. 1999)).

Where a District Court exercises jurisdiction over IDEA cases, they are to give due weight to the factual findings of the Administrative Law Judge ("ALJ").  S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260 (3d Cir. 2003).  "Under the IDEA, the reviewing court is obliged to conduct a modified de novo review, giving due weight to the underlying administrative proceedings."  Id.  (citing Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 758).  The reviewing court will consider factual findings from the administrative proceedings to be prima facie correct.  MM v. Sch. Dist. of Greenville County, 303 F. 3d 523, 530-31 (4th Cir. 2002).  "If a reviewing court fails to adhere to [the administrative findings], it is obliged to explain why.  The court is not, however, to substitute its own notions of sound educational policy for those of local school authorities."  Id.  Thus, this Court is required to defer to the ALJ's findings unless they are not supported by anything in the record.

## DISCUSSION

Under the IDEA, each child in a state receiving federal educational assistance is entitled to a free appropriate public education ("FAPE").[1] 20 U.S.C.A. § 1412(a)(1) (2007).  The Third Circuit has defined FAPE as consisting "of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit from' the instruction."  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995) (quoting Board of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982)).

---

[1] Section 1412(a)(1)(A) states, "A free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive."

**A.      Child Find Requirement**

The IDEA requires the identification, location, and evaluation of all children in a state with

disabilities.[2] 20 U.S.C. § 1412(a)(3)(A).  This requirement does not, however, require the evaluation

of all students.  Rather, based on the plain language school districts must only evaluate students who

have been identified as having a disability.  See id.

There is a two-year statute of limitations for the child find provisions under the IDEA.  See

20 U.S.C.A. § 1415(f)(3)(C) (requiring that parents request an impartial due process hearing within

two years).  Therefore, the Special Education Due Process Review Appeals Panel (the "Appeals

Panel") did not consider the claims for Daniel's first and second grades.  App. Op. at 4.  Even if it

did not conclude that these claims were time-barred (indeed, the Parents claim that the two year

statute of limitations does not apply here because they did not go into effect until 2005), the Appeals

Panel found that during the first and second grades "the District did not have reason to believe that

[Daniel] met the two-part eligibility definition of child with a disability under the IDEA."  Id.; see

Pl. Resp. Def's Mot. J. Admin. Record at 1.

The fact that the District issued an evaluation report for Daniel on January 12, 2004 does not

automatically signal that the District believed Daniel to possess a disability at that time.  See App.

Op. at 1, 4 n.30 ("[T]he District's initiation of an evaluation does not necessarily mean that it had

reason to suspect possible eligibility; in this adversarial, litigious environment, some districts

understandably engage in such evaluations defensively, treating as red flags what may be only light

---

[2] This requirement is as follows:

> All children with disabilities residing in the State . . . regardless of the severity of their disabilities,
> and who are in need of special education and related services are identified, located, and evaluated
> and a practical method is developed and implemented to determine which children with disabilities
> are currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3)(A).

pink ones.") Using the appropriate standard of "what the District knew or had reason to know at the time," the Panel found that "[i]t was not until the first IEE, which included a diagnosis of AD/HD, that the District might have had reason to suspect a recognized classification." Id. at 4. The Parents obtained this first IEE on January 27, 2004 (while Daniel was in second grade) and, in response, the District commenced the evaluation process to evaluate Daniel education on February 24, 2004. Id. at 1-2. When the Parents obtained their first IEE, the District had a definite reason to suspect that Daniel had AD/HD and it began the evaluation process at that time. Thus, the record supports the ALJ's conclusion that the District did not fail to satisfy its child find obligations under the IDEA and deference should be given to such decision.

**B.      Appropriateness of IEP**

Section 1414(d)(1)(A) sets forth the requirement of an individualized education program ("IEP"). The burden of showing an appropriate IEP is on the party bringing suit–in this case, the Parents. Schaffer v. Weast, 546 U.S. 49, 51 (2005). The issue ultimately is one of fact and not of law. Carlisle Area Sch. v. Scott, 62 F.3d 520, 526 (1995). Further, any determination of an IEP's adequacy must view the IEP from the perspective of the time it was offered and not retrospectively. Carlisle, 62 F.3d at 534 ("[T]he measure and adequacy of an IEP can only be determined as of the time it was offered to the student, and not at some later date." (quoting Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993)).

A school district is required to show only that the proposed IEP would provide a "meaningful educational benefit" and not that it would be the "best possible education." S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 271 (3d Cir. 2003); see also Bd. of Educ. V. Rowley, 458 U.S. 176, 192 (1982) (requiring that IEP provide "meaningful" educational access that confers "some

educational benefit" upon the disabled child).  This is more than just a de minimis educational

benefit.  M.C. v. Central Regional Sch. Dist., 81 F.3d 389, 393 (3d Cir. 1996).  This analysis requires

an examination of a student's ability on a student-by-student basis.  Ridgewood Bd. of Educ. v. N.E.,

172 F.3d 238, 248 (3d Cir. 1999) (citing Rowley, 458 U.S. 176; Polk v. Central Susquehanna

Intermediate Unit 16, 853 F.2d 171 (3d Cir. 1988)).

The IDEA sets out the requirement for the "least restrictive environment"[3] ("LRE").  20

U.S.C.A. § 1414(a)(5)(A) (2007).  Generally, the LRE provides education to disabled students along

with non-disabled students satisfactorily in the school the disabled student would attend

notwithstanding the disability.  Carlisle Area Sch. v. Scott, 62 F.3d 520, 535 (1995).

The Third Circuit has interpreted the LRE requirement to be "the least restrictive

environment that will provide [the student] with a meaningful educational benefit."  S.H. v. State-

Operated Sch. Dist. of Newark, 336 F.3d 260, 265 (3d Cir. 2003) (quoting T.R. v. Kingwood, 205

F.3d 572, 578 (3d Cir. 2000)).  The Third Circuit uses a two-part test to determine whether a school

district has complied with the requirement of LRE.  S.H. v. State-Operated Sch. Dist. of Newark,

336 F.3d 260, 272 (3d Cir. 2003).  First, a court must "determine whether the school can educate

the child in a regular classroom with the use of supplementary aids and services."  Id.  Second, if

"the child cannot be educated in a regular classroom, the next step is to decide whether the school

is mainstreaming the child to the maximum extent possible."  Id. (citing Oberti v. Bd. of Educ. of

Borough of Clementon Sch. Dist., 995 F.2d 1204, 1215 (3d Cir. 1993).  Combining the requirement

---

[3] The IDEA states:

> To the maximum extent appropriate, children with disabilities, including children in public or private
> institutions or other care facilities, are educated with children who are not disabled, and special
> classes, separate schooling, or other removal of children with disabilities from the regular educational
> environment occurs only when the nature or severity of the disability of a child is such that education
> in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C.A. § 1414(a)(5)(A) (2007).

of the least restrictive environment with that for a meaningful educational benefit, S.H. specifies that the requirement is for the education of disabled students in "the least restrictive appropriate educational environment." Id. (citing Ridgewood, 172 F.3d at 249). It is not necessary for the school district to prove the inappropriateness of the parents' chosen more restrictive setting. Carlisle, 62 F.3d at 533.

To summarize, an appropriate IEP is one that confers a meaningful educational benefit in the least restrictive appropriate educational environment. The record is not inconsistent with the Appeals Panel's finding that the District's IEPs for Daniel did confer a meaningful educational benefit–a case-by-case, factual determination. See App. Op. at 5; HO Op. at 22, 24. By the end of the second grade, Daniel "evidenced notable progress." App. Op. at 2. In third grade, Daniel made "substantial although not uniform progress." Id. For the two last two IEPs, the Appeals Panel determined that "[a]lthough not optimal in their content or form, both of the successive IEPs were reasonably calculated to yield meaningful progress, and the procedural defects fell short of being a denial of FAPE." App. Op. at 5 (emphasis added). Moreover, the Hearing Officer also determined that Daniel had experienced some progress under the District's IEP, even reaching grade-level in writing. HO Op. at 24.

Here, the Parents have chosen a more restrictive environment for Daniel's education than the school District chose. This fact does not automatically make the parents' chosen environment more inappropriate than that in the District's IEP. The school's program, however, did include Daniel in a classroom with non-learning-disabled students (along with supplementary aids), and this approach witnessed progress in Daniel's skills. These facts are supported by the record. Therefore, the District did not fail to provide an appropriate IEP for Daniel that would

provide a meaningful educational benefit in the least restrictive environment because Daniel was

experiencing a measurable educational improvement while remaining in a classroom with non-

learning-disabled students.

**C.      Tuition Reimbursement and Compensatory Education**

The parents seek full days of compensatory education and subsequent tuition reimbursement.

Pl. Mot. J. Admin. Record at 24.  With respect to compensatory education, § 1412(a)(10)(C)(ii)

provides:

> If the parents of a child with a disability, who previously received a special education
> and related services under the authority of a public agency, enroll the child in a
> private elementary school or secondary school without the consent of or referral by
> the public agency, a court or a hearing officer may require the agency to reimburse
> the parents for the cost of that enrollment if the court or hearing officer finds that the
> agency had not made a free appropriate education available to the child in a timely
> manner prior to that enrollment.

20 U.S.C.A. § 1412(a)(10)(C)(ii) (2007).  The Supreme Court has determined that retroactive tuition

reimbursement is a remedy available to parents where "a court determines that a private placement

desired by the parents was proper under the Act and that an IEP calling for placement in a public

school was inappropriate." Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ., 471 U.S.

359, 370 (1985); see also Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 248 (3d Cir. 1999).  The

Third Circuit has said, "the test for the parents' private placement is that it is appropriate, and not

that it is perfect." Warren G. v. Cumberland County Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999).

Tuition reimbursement, therefore, requires showing that both the IEP was inappropriate and

that the Parents' placement was appropriate.  As determined in Part II, supra, the District's IEPs for

Daniel were appropriate.  Therefore, it is not necessary to test whether the parents' placement was

appropriate.[4]

The District contends that private school tuition costs may be "reduced or denied" if parents do not give notice of withdrawing their child "at the most recent IEP meeting that the parents attended prior to removal of the child from the public school." Def. Mot. J. Admin. Record at 27 (quoting 34 C.F.R. § 300.403(d)(1)(i)). However, it is not necessary to evaluate the reduction of tuition reimbursement as tuition reimbursement is not appropriate here, moreover the Appeals Panel found that "it was clearly questionable whether [the Parents] met the requisite notice requirement in terms of the requisite timing and contents." App. Opp. at 5-6.

The right to compensatory education comes from "the denial of an appropriate education–and not merely the denial of an appropriate IEP." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 250 (3d Cir. 1999). It accrues from the moment the school district "knows or should know" that the student is not receiving an appropriate education. Id. at 250. Thus, where the student is receiving an appropriate education, parents are not entitled to compensatory education. Therefore, the Parents here are not entitled to tuition reimbursement and/or compensatory education for the cost of enrolling Daniel in a private school for children with learning disabilities.

### CONCLUSION

For the foregoing reasons, the judgment on the administrative record will be granted in favor of the Defendant and Plaintiffs' Motion will be denied. An appropriate order follows.

---

[4] Moreover, it should be noted that the Appeals Panel concluded that the Parents did not meet their "burden of persuasion with regard to the appropriateness of their unilateral placement." App. Op. at 5. However, it is not necessary to reach the question of whether or not the Parents met their burden because the IEP was not inappropriate here.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL S. A MINOR, BY AND        :
THROUGH HIS PARENTS AND          :
NATURAL GUARDIANS,               :        CIVIL ACTION
MICHAEL S. AND DAWN S.,          :        NO.    06-3531
                                 :
AND                              :
                                 :
MICHAEL S. AND DAWN S.           :
INDIVIDUALLY AND                 :
ON THEIR OWN BEHALF,             :
ALL OF NEWTOWN, PA,              :
     Plaintiffs,            :
                                 :
     v.                     :
                                 :
COUNCIL ROCK SCHOOL DISTRICT,:
     Defendant.             :

## ORDER

**AND NOW** on this _____ day of October, 2007, upon consideration of Plaintiffs' Motion

for Judgment on the Administrative Record (Doc. 7), Defendant's Motion for Judgment on the

Administrative Record (Doc. 8), and Plaintiffs' Response to Defendant's Motion (Doc. 10), **IT IS**

**HEREBY ORDERED and DECREED** that Plaintiffs' Motion is **DENIED** and Defendant's

Motion is **GRANTED**.

The Clerk of the Court shall mark the above-captioned case **CLOSED**.


BY THE COURT:


_____
**Hon. Petrese B. Tucker, U.S.D.J.**